CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 19 2009

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action No. 5:05-CR-00019 |
| | ) | Civil Action No. 5:08-CV-80100 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARK JAMES KONSAVICH, | ) | By: Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

Mark James Konsavich, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, to which Konsavich has responded, making the matter ripe for disposition. For the following reasons, Konsavich's motion is denied.

## BACKGROUND

On May 18, 2005, Konsavich was charged in a one-count indictment returned by a grand jury in the Western District of Virginia. Count One charged that, beginning on a date unknown to the grand jury, but approximately within or about October 2004, and continuing until on or about May 29, 2005, Konsavich and others conspired to manufacture, distribute, and possess with intent to distribute 50 or more grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846.

On January 18-19, 2006, Konsavich was tried by jury on the conspiracy charge. The record at trial indicates that, between September 2004 and March 2005, Konsavich was involved in a conspiracy to manufacture and distribute methamphetamine at various locations in Virginia, Pennsylvania, and the District of Columbia. From September through early November,

Konsavich, Stephani Dawson, David Vandevner, and Samuel Russo purchased methamphetamine from a source in Atlanta, Georgia and resold the drugs in Washington, D.C. In early November, Konsavich contacted the Drug Enforcement Administration ("DEA") to disclose the location of Vandevner, who was a fugitive at that time. Konsavich's assistance on this occasion led to the arrest of Vandevner. Konsavich did not contact the DEA again after this occasion.

On November 27, 2004, Konsavich, Dawson, and Russo moved into the home of Joseph Leonard, located at 2208 Readus Road in Edinburgh, Virginia. Leonard lived in the house with his two-year old daughter. During his time at Readus Road, Konsavich attempted to manufacture methamphetamine between five and eleven separate times. While most of the attempts were conducted in an outbuilding approximately twenty to thirty yards from the residence, at least one attempt took place inside the home.

At the end of December in 2004, Konsavich left the Readus Road residence due to a conflict with Dawson. Thereafter, he moved to various residences before meeting Douglas Greene and Robert Lazarte in February 2005. Konsavich attempted to manufacture methamphetamine for Greene approximately seven times at various locations until his arrest on March 29, 2005.

On January 19, 2006, the jury found Konsavich guilty of conspiring to manufacture, distribute, and possess with intent to distribute 50 or more grams of methamphetamine. The court subsequently sentenced Konsavich to a term of imprisonment of 235 months.

On direct appeal to the United States Court of Appeals for the Fourth Circuit, Konsavich raised the following claims pertaining to his sentence:

1. the sentence enhancement for substantial risk to the life of a minor was improper;

2. he should have received a safety valve reduction;

3. the sentence enhancement for unlawful importation was improper; and

4. the guidelines ranges are effectively mandatory in the Fourth Circuit.

On May 9, 2007, the Fourth Circuit affirmed Konsavich's sentence. <u>United States v. Konsavich</u>, 232 Fed. Appx. 263 (4th Cir. 2007). Konsavich filed for a writ of certiorari to the United States Supreme Court, raising claims 1, 3, and 4, as set forth above. The Court denied that motion on October 9, 2007.

On June 16, 2008, proceeding <u>pro se</u>, Konsavich filed a motion for a new trial based on newly discovered evidence. Specifically, Konsavich claimed that he learned that Stephani Dawson was under the impression that she was working as an informant for the DEA during the time of the conspiracy. On September 22, 2008, the court denied Konsavich's motion, concluding that he failed to demonstrate that the evidence would probably have resulted in an acquittal at a new trial. Konsavich appealed that denial on October 6, 2008, and on April 21, 2009 the Fourth Circuit affirmed the district court's order.

Konsavich filed the instant § 2255 motion on October 14, 2008. The motion raises several claims of ineffective assistance of counsel against both his trial and appellate counsel. Specifically, he alleges that:

1.     trial counsel was ineffective in failing to:

    a.     inform him that his proffer could be used against him;

    b.     obtain and present evidence favorable to him;

    c.     request grand jury testimony at trial;

3

  d. file a notice pursuant to Rule 12.3;

  e. request a multiple conspiracy instruction at trial;

  f. object to jury instruction errors during trial;

  g. file a Rule 29 motion for acquittal;

  h. present evidence favorable to defendant at sentencing; and

2. appellate counsel was ineffective in failing to file a reply brief in response to the government's brief on appeal.

In addition to his claims of ineffective assistance of counsel, Konsavich also raises the following claims:

3. there was insufficient evidence as to defendant's intent;

4. the jury's verdict rested on a legally invalid theory of guilt based on evidence that occurred during a time period charged in the indictment that was not attributable to him;

5. the facts presented at trial established two separate conspiracies whereas the indictment charged only one;

6. the defendant was denied a unanimous jury verdict given the evidence of multiple conspiracies;

7. the sentencing court did not consider relevant factors outside of 18 U.S.C. § 3553(a) in imposing the defendant's sentence; and

8. the prosecutor withheld evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963).

  The government filed a motion to dismiss on December 15, 2008. The government argues that Konsavich's claims are procedurally defaulted; that he fails to establish actual innocence or ineffective assistance of counsel to excuse his procedural default; and that he fails

4

Case 5:05-cr-00019-GEC-RSB   Document 153   Filed 06/19/09   Page 4 of 20   Pageid#: 484

to show that any of his claims are meritorious. Konsavich filed a response to the motion to dismiss on January 29, 2009. He has also requested an evidentiary hearing on his § 2255 motion. The matter is now ripe for review.

## LEGAL STANDARDS

On a motion pursuant to 28 U.S.C § 2255 to vacate, set aside, or correct a sentence, a defendant bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Under § 2255, a prisoner may challenge his sentence on the grounds that: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). In the present action, Konsavich alleges violations of the Fifth and Sixth Amendments.

A § 2255 motion is not, however, a substitute for appeal. Claims that could have been raised on appeal or arguments in support of a previously raised claim are barred as procedurally defaulted, absent a showing of either (1) cause and prejudice or (2) actual innocence. Bousley v. United States, 523 U.S. 614, 622 (1998). Konsavich alleges both cause and prejudice, through ineffective assistance of counsel and prosecutorial misconduct, and actual innocence. The court discusses each in turn.

## DISCUSSION

A. **Ineffective Assistance of Counsel**

Konsavich raises several ineffective assistance of counsel claims predicated on various failures by his trial counsel and appellate counsel. At trial, Konsavich was represented by

5

appointed counsel R. Darren Bostic. On direct appeal to the Fourth Circuit, Konsavich was represented by Aaron L. Cook.

In order to successfully challenge a sentence on the basis of ineffective assistance of counsel, Konsavich must satisfy the two-prong test set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). Defendant bears the burden of persuasion on both prongs. First, the defendant must show that "counsel's representation fell below an objective standard of reasonableness," considering circumstances as they existed at the time of representation. Id. at 688. The defendant must overcome a strong presumption that counsel's performance was within the range of competence demanded from attorneys defending criminal cases. Second, the defendant must demonstrate a "reasonable probability" that, but for counsel's errors, the outcome of the proceeding would have been different. Id. at 694. If the defendant fails to satisfy either prong, the court need not inquire into whether the other has been satisfied. Id. at 697.

The court finds that none of Konsavich's ineffective assistance of counsel claims meets the two-pronged Strickland test.

### 1. Trial Counsel Failed to Inform Defendant that Proffer Could be Used Against Him

Konsavich alleges that his attorney was ineffective when he failed to inform Konsavich that his proffer could be used against him at grand jury proceedings or at trial. (Petr.'s Br. at 22-25.) Specifically, Konsavich alleges that his attorney misrepresented the nature of the proffer; informed him that he had to give a proffer; and told him that nothing he said could be used

6

against him.[1] Because Konsavich also states in his brief that "the Government referred to the proffer repeatedly at trial, while Counsel sat by and did nothing," (Petr.'s Br. at 25), it appears Konsavich also makes a claim for failure to object to the use of his proffer statements.

In alleging prejudice as a result of these errors, Konsavich claims the government "had no way of 'connecting the dots' of [his] case without the information [he] provided in [his] proffer" and that if counsel had informed him of the consequences of a proffer he "simply would not have cooperated with the Government." (Petr.'s Br. at 24-25.). This allegation of prejudice, however, is contradicted by the record. The record reflects that Konsavich freely gave a statement to investigators after waiving his Miranda rights on March 29-30, 2005, well before his proffer. The record also reflects that Konsavich provided substantially the same information in his proffer as he did in his Mirandized statement to investigators.

> Q: After that, on May 11 of '05, you gave a proffer statement. That was the word you used, right?
> A: Right.
> Q: Why is that different - why do you call that a proffer statement versus your Mirandized statement?
> A: It was just an interview to me. I have no idea between the legalities between the two conversations, but I mean it's pretty much the same statement except we covered more of the crowds. We covered more of the David Vandevners and the Nina and Eddie.
> Q: But you knew - there's nothing different in that. You knew it was important. You were talking to law enforcement, is that right?
> A: Right. It was all the same information.

---

[1] Konsavich's allegations are contradicted by his attorney's affidavit. According to Bostic, Konsavich indicated to him that he wished to cooperate with the government's investigation. Bostic states that he never advised Konsavich that he had to proffer and that he has never advised any client that they are required to provide information to law enforcement. Lastly, Bostic states that he believed the best alternative for Konsavich strategically was to work to obtain a 5K motion from the government, the nature of which he explained to Konsavich. (Bostic Aff. at 1-2.)

7

(Trial Tr. at 207-08, Jan. 19, 2006.) Konsavich cannot now claim that, but for his counsel's errors, he would not have cooperated with the government because the record indicates that, prior to his attorney's involvement, Konsavich had already provided the government with "the same information" after his arrest.[2]

### 2. Trial Counsel Failed to Obtain and Present Evidence Favorable to the Defendant

Konsavich next claims that his trial counsel was ineffective in that he failed to obtain and present two types of evidence favorable to the defendant's case. First, he claims that his attorney should have requested some sort of evidence relating to the various meetings Konsavich purportedly had with DEA agents. Konsavich states that this "would have benefitted [him] at trial" and that, with these documents, "the outcome of this case would likely have been substantially different." (Petr.'s Br. at 26.) Second, Konsavich claims his attorney should have requested a handwritten letter dated in April 2005 which identified Konsavich's role as an informant. Although Konsavich does not provide any detail regarding this letter, according to him, it would have impeached Agent Maloney's testimony.

Bostic's affidavit again contradicts these allegations. Bostic states that there was no need for him to make requests as to particular evidence because the government maintained an open file, and that he "had subpoenaed and presented evidence at trial from Investigator Maloney about the cooperation of Mr. Konsavich prior to his being charged." (Bostic Aff. at 2.)

More importantly, Konsavich again fails to demonstrate prejudice. Agent Maloney

---

[2] With respect to use of the proffer statements at trial, the court notes that, prior to any questioning concerning his proffer statements, Konsavich opened the door to such questioning in the following exchange: "Q: You told Agent Rosel that, that I was making fake methamphetamine? A: In the proffer also, yes, sir." (Trial Tr. at 201, Jan. 19, 2006.)

8

admitted that Konsavich had met with DEA agents on several occasions, so any supporting documents as to this fact would not have changed the outcome of the trial. Further, Bostic subjected Maloney's testimony to vigorous cross-examination. Even assuming the impeaching value of the handwritten letter, a review of the trial transcript demonstrates that there was more than sufficient evidence to find beyond a reasonable doubt that Konsavich was not working for the government.

### 3. Trial Counsel Failed to Request Grand Jury Testimony at Trial

In a similar allegation, Konsavich claims that his attorney should have requested Agent Rosel's grand jury testimony for impeachment purposes. As already discussed, however, Bostic did not need to request evidence because the government had an open-file policy. Further, Konsavich states the crux of his claim as: "Counsel's failure to request and review the testimony...was ineffective assistance because he was obligated to submit Agent Rosel's testimony to proper adversarial testing." (Petr.'s Br. at 29.) The record, however, reflects that Bostic did in fact submit Agent Rosel's testimony to proper adversarial testing through vigorous cross-examination. (Trial Tr. at 62-75, Jan. 18, 2006.) Konsavich has therefore failed to show any prejudice.

### 4. Trial Counsel Failed to File a Notice Pursuant to Rule 12.3

Konsavich claims that he informed his attorney at the beginning of the proceedings that he wished to present a public authority defense. A defendant wishing to present this defense must file a notice with the court under Rule 12.3 of the Federal Rules of Criminal Procedure. Under Rule 12.3(a), the notice must be filed within the time provided for filing pretrial motions. In addition, the notice must contain the following information: the law enforcement agency

involved; the agency member on whose behalf the defendant claims to have acted; and the time during which the defendant claims to have acted with public authority.

Konsavich claims that his attorney failed to file the notice on time; failed to include the required information in the notice under Rule 12.3(a); and failed to make an attempt to remedy this error by asking for a continuance so that he could properly comply with Rule 12.3(a). Konsavich states that he was unable to call witnesses in support of his defense and that, as a result, his entire defense rested on his own testimony. Further, he alleges that, had counsel properly filed the Rule 12.3 notice, he would have been aware that the government intended to deny his status as a confidential informant. This failure thus prevented him from making an informed decision as to whether to enter a plea agreement or whether to go to trial. He also states that, had his attorney filed the notice and had he been able to present witnesses in his defense, "[he] would have called witnesses, Agent Carl Shayer of the DEA." (Petr.'s Reply Br at 20.)

Konsavich's attorney filed a notice of Public Authority Defense on January 4, 2006. The notice, however, lacked any of the required information under Rule 12.3. As a result, the court deemed Konsavich's notice deficient under Rule 12.3.[3] The government concedes that this is Konsavich's strongest argument, so the court will assume for the purposes of this discussion that Bostic's conduct was deficient.

Nevertheless, even assuming Bostic's conduct fell below the objective standard of reasonableness, Konsavich has failed to show prejudice. First, Konsavich cannot meet his burden of proving prejudice by simply stating that he would have called "witnesses, including

---

[3]The court also noted that the notice was untimely. Under the court's scheduling order, all pretrial motions were to be filed at least 15 days prior to the trial date.

Agent Carl Shayer" without any supporting affidavit of how these witnesses or Agent Shayer would have testified. (Petr.'s Reply Br. at 20.) In order to show the requisite prejudice, he must demonstrate that the testimony of uncalled witnesses would have been favorable and that the witnesses would have testified. See Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985); see also Stillwell v. United States, No. 7:06-626, 2007 U.S. Dist. LEXIS 7298, at *10 (W.D. Va. Feb. 1, 2007) (defendant failed to carry burden because he alleged no specific evidence to which witness would have testified).

Konsavich's other claim of prejudice, that he would have pled guilty had his attorney filed the notice, is fatally inconsistent with his contention that he would have called witnesses at trial to negate mens rea had his attorney filed the notice. And although he currently claims that his entire defense rested on the public authority defense to negate mens rea, a substantial portion of Konsavich's testimony at trial was spent denying ever having manufactured methamphetamine. There is thus no reason to believe that, had Konsavich been able to fully present his public authority defense, he would have chosen not to do so. Konsavich has failed to establish a reasonable probability that he would actually have pled differently but for counsel's failure to properly file the notice.

Moreover, Konsavich offers no argument or evidence as to the sentence he received compared to the sentence he would have received had he chosen to plea guilty. He makes only the bald assertion that, had he entered into an agreement with the government, he "would be home with my family at this time." (Petr.'s Reply Br. at 20.) Without any supporting evidence, however, it is mere speculation that Konsavich's sentence would have been any less had he pleaded guilty and, as such, there is no basis to find prejudice. See United States v. McCoy, No.

11

99-6096, 1999 U.S. App. LEXIS 19242, at *19 (4th Cir. Aug. 16, 1999); Lee v. United States, No. 6:08-968, 2009 U.S. Dist. LEXIS 21209, at *28 (M.D. Fl. March 4, 2009).

Finally, this court cannot grant relief to a defendant on a showing of prejudice simply because the outcome would have been different. The court is empowered to grant relief where the "result of the proceeding was fundamentally unfair or unreliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Despite Bostic's failure to properly file the Rule 12.3 motion, Konsavich was able to argue his public authority defense to such an extent that a public authority instruction was warranted at trial. Taken together, this court finds that Konsavich has failed to show prejudice.

### 5. Trial Counsel Failed to Request a Multiple Conspiracy Instruction

Konsavich claims that, because he told counsel of separate conspiracies and because the evidence at trial demonstrated separate conspiracies, counsel should have requested a multiple conspiracy instruction. A multiple conspiracy instruction, however, was not required in this case, and therefore counsel did not perform unreasonably in failing to request one.[4] The Fourth Circuit has held that a "multiple conspiracy instruction is not required unless the proof at trial demonstrates that appellants were involved *only* in separate conspiracies *unrelated* to the overall conspiracy charged in the indictment. United States v. Kennedy, 32 F.3d 876, 884 (4th Cir. 1994); see also Hall v. United States, 30 F. Supp. 2d 883, 893 (E.D. Va. 1998) (counsel's failure to request jury instructions on multiple conspiracies was not deficient when proof at trial did not

---

[4]The court notes that Bostic stated in his affidavit: "I concur with Mr. Konsavich that I should have requested an instruction on multiple conspiracies. I would further defer to the transcript of the trial as to [] whether the evidence was sufficient to establish the elements of the crime beyond a reasonable doubt." (Bostic Aff. at 1.) Despite Bostic's admission that he strategically should have requested an instruction, this court does not find a failure to do so unreasonable.

12

establish separate unrelated conspiracies).

The evidence at trial revealed a single conspiracy, made up of multiple members, whose common goal was to sustain a methamphetamine market in the Washington, D.C. area. Konsavich himself recognized this at trial when he explained that the reason he drew an organizational chart purportedly for the DEA was "[t]o show how all these groups are actually interrelated, even from Douglas Greene to David Vandevner. It's all one circle." (Trial Tr. at 227, Jan. 19, 2006.)

Konsavich points to the fact that "Douglas Greene didn't know any of the members of the other conspiracy." (Petr.'s Reply Br. at 14.) In United States v. Newton, however, the Fourth Circuit found each co-conspirator need not know each other in order for all of them to be engaged in a single conspiracy. 141 Fed. Appx. 114, 117 (4th Cir. 2005). It was sufficient that the co-conspirators were linked "only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." Id.

Further, even assuming that a multiple conspiracy instruction was required and that Bostic was deficient when he failed to request the instruction, Konsavich has failed to show prejudice. In order to find prejudice from failure to instruct the jury on multiple conspiracies, it would be necessary to "conclude that the evidence of multiple conspiracies was *so* strong in relation to that of a single conspiracy that the jury probably would have acquitted" had it been given the instruction. United States v. Tipton, 90 F.3d 861, 883 (4th Cir. 1996) (emphasis in original). Although Konsavich asserts that "the properly instructed Jury would have most likely acquitted me," (Petr.'s Br. at 33), as already explained, there was sufficient evidence presented at

13

trial from which a jury could have found the single conspiracy charged in the indictment. Konsavich therefore does not meet his burden of demonstrating prejudice.

### 6. Trial Counsel Failed to Object to Jury Instruction Errors During Trial

Konsavich makes three separate claims of ineffective assistance of counsel with respect to the jury instructions. First, Konsavich claims that his counsel was ineffective when he failed to object to the prosecutor's questioning of the court out of earshot of the jury with respect to instructions on the public authority defense. Konsavich states that counsel should have objected to this questioning and requested that the instruction be clarified in front of the jury.

Bostic's failure to object did not fall below an objective level of reasonableness because the instructions accurately reflected the law with respect to the public authority defense. Counsel cannot have been deficient for failing to object to proper instructions, which were proposed by Bostic himself. Lastly, Konsavich's bald assertion that "it is a safe bet that the Jury did not [understand the instructions] either" is not sufficient to show prejudice. (Petr.'s Br. at 34.)[5]

Second, Konsavich claims that the public authority instruction was not included in the written copy of the instructions given to the jury to use during their deliberations. He argues that his attorney should have objected, and insisted that the written instructions comport with what was read orally. Konsavich presents no evidence that the jury instructions were not an accurate

---

[5] Aside from failing to show prejudice, Konsavich's argument that the instructions were confusing to the prosecutor is not reflected in the record. During the colloquy referenced by Konsavich, the prosecutor believed he misheard the instructions and "want[ed] to make sure it said reasonably believed" as opposed to "had reason to believe." (Tr. of Jury Instrs. at 21). The court informed him that the instructions used "reasonably believed" and that that phrase was used in delivering the instructions. After this exchange, neither Bostic nor the prosecutor had any objections to the charge.
14

version of the instructions given orally to the jury. As discussed, the defendant bears the burden of proving his grounds for collateral attack by a preponderance of the evidence. Miller, 261 F.2d at 547.

Lastly, Konsavich claims that the jury instructions did not properly explain the law of the public authority defense and that it unconstitutionally shifted the burden of proof to him. Konsavich argues that the instructions should have specified that Konsavich did not have the burden of proving that he was working for law enforcement. Because of this failure, he states that "the burden of proof may have been unconstitutionally shifted upon [him] at trial." (Petr.'s Br. at 40.) Such speculation, however, is not sufficient to show prejudice. Further, the instructions given by the court were proper in this case. The instructions were proposed by Konsavich's counsel and modeled after instructions that were upheld in United States v. Burrows, 36 F.3d 875, 881 (9th Cir. 1994). Because Konsavich cannot show prejudice and because the instructions given properly explained the law, his counsel cannot have been ineffective for failure to object to them.

### 7. Trial Counsel Failed to File a Rule 29 Motion for Acquittal

Konsavich argues that his counsel was ineffective in neglecting to file a motion for judgment of acquittal when the government failed to prove his specific intent.[6] The crux of defendant's argument here rests on the fact that the government did not establish Konsavich's intent to commit the crime of conspiracy.

---

[6] The court notes that, after the government rested, Bostic did in fact move for judgment of acquittal with respect to the drug weight charged by the government. (Trial Tr. at 151, Jan. 19, 2006.)

15

Despite Konsavich's assertions, the record is replete with evidence from which a jury could have found that Konsavich was not working for the government. In addition to the testimony of Russo and Greene that Konsavich was in fact making methamphetamine, Agent Rosel testified that Konsavich was not working for law enforcement as it pertained to this conspiracy. Konsavich's counsel was afforded the opportunity to cross-examine Russo, Greene, and Agent Rosel. There was, therefore, a question for the jury as to Konsavich's intent, and Konsavich could not have suffered any prejudice as a result of counsel's failure to make a Rule 29 motion specifically directed to the issue of intent.

### 8. Trial Counsel Failed to Present Evidence Favorable to the Defendant at Sentencing

Konsavich alleges that his counsel was ineffective at sentencing with respect to his sentence enhancement for substantial risk to the life of a minor. Specifically, he alleges that counsel should have objected to the exaggerated risk painted by the government when it stated that the outbuilding "exploded" rather than simply burned down. According to Konsavich, "an explosion represents much much more risk tha[n] just a fire." (Petr.'s Br. at 43.)[7]

Konsavich, however, misses the point. The enhancement did not turn on whether the outhouse actually exploded or burned to the ground. Rather, as the Fourth Circuit pointed out, the enhancement rested on the *risk* of harm, as evidenced by, among other things, the fact that numerous flammable chemicals were stored in the outbuilding thirty yards from the residence

---

[7]Konsavich claims these to be "[f]alse statements by the Prosecutor" and that "the Prosecution's exaggeration was meant to mislead the Court." (Petr.'s Br. at 43.) To the extent that Konsavich could argue that there was prosecutorial misconduct as another avenue to excuse his procedural default of this claim, he again fails to show prejudice.

16

where a minor resided; that at times the chemicals were disposed of in the residence's kitchen; and that the cooking process itself was dangerous. Konsavich, 232 Fed. Appx. at 265. Konsavich is unable to show that the outcome of his sentencing would have been different if the prosecution had not used the term "exploded."

Further, Konsavich has already litigated the propriety of this enhancement in his direct appeal to the Fourth Circuit. He cannot now recast this argument in the guise of an ineffective assistance claim. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976) (issues previously decided on direct appeal cannot be recast under the guise of collateral attack).

### 9.  Appellate Counsel Failed to File a Reply Brief

Konsavich claims that his appellate counsel was ineffective when he failed to file a reply brief to the government's brief on appeal, which allegedly contained false statements. Specifically, he argues that statements indicating that he was still at the Readus Road location at the time of the outbuilding fire in January 2005 should have been corrected by his counsel, and that failure to do so resulted in his six point enhancement for endangering the life of a minor.

The alleged sentencing error with respect to the six point enhancement was, as already noted, argued on direct appeal to the Fourth Circuit. The Fourth Circuit possessed the entire record and counsels' briefs. Further, the Fourth Circuit opinion indicates that the Court only considered the time when Konsavich was actually residing at Readus Road in determining whether the enhancement was proper. Konsavich, 232 Fed. Appx. at 264-65 ("Konsavich lived at the Readus Road house until Christmas" and "[t]he record indicates that a minor was living in the Readus Road residence while Konsavich stayed there"). Konsavich is therefore unable to

17

show any prejudice sufficient to sustain an ineffective assistance of counsel claim.

**B.	Prosecutorial Misconduct**

Konsavich makes the bare assertion that "there was a <u>Brady</u> violation because the Government was required, without Counsel's specific requests to provide evidence in its possession tending to prove my innocence." (Petr.'s Br. at 26.) This claim is procedurally defaulted because Konsavich raised it for the first time in his <u>habeas</u> petition. Konsavich does not argue that there is either cause or prejudice to excuse this default. Further, Konsavich does not identify what evidence was withheld or how it would have affected the outcome of the case. As such, Konsavich cannot overcome the procedural default of his <u>Brady</u> claim.

**C.	Remaining Claims of Error**

Konsavich also makes several substantive claims, unrelated to ineffective assistance of counsel, that are procedurally barred. Specifically, Konsavich alleges that: (1) there was insufficient evidence as to his intent; (2) the jury's verdict rested on a legally invalid theory of guilt based on evidence that occurred during a time period charged in the indictment that was not attributable to him; (3) the facts presented at trial established two separate conspiracies whereas the indictment charged only one; (4) he was denied a unanimous jury verdict given the evidence of multiple conspiracies; and (5) the sentencing court did not consider relevant factors outside of 18 U.S.C. § 3553(a) in imposing his sentence in violation of <u>United States v. Booker</u>.

Because Konsavich's claims were either not raised on direct appeal or raised and decided by the Court of Appeals, they are procedurally defaulted unless he demonstrates cause and

18

prejudice or actual innocence.[8] Konsavich first argues that his claims of ineffective assistance of counsel demonstrate cause and prejudice sufficient to excuse his procedural default. However, for the reasons previously explained, his ineffective assistance of counsel claims are without merit. In the alternative, Konsavich also argues that he is actually innocent.

To state a claim of actual innocence sufficient to excuse procedural default, a defendant must show that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327-28 (1995); see also Bousley, 523 U.S. at 623. "[P]risoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House v. Bell, 547 U.S. 518, 536-37 (2006) (internal quotation marks omitted).

To support his assertion, Konsavich argues that the evidence was insufficient to support his conviction. He offers no new evidence. Actual innocence, however, means "factual innocence," not mere legal insufficiency. Bousley, 523 U.S. at 623; United States v. Jackson, No. 5:02-30020, 2009 U.S. Dist. LEXIS 35076, at *7 (W.D. Va. April 23, 2009). Accordingly, the court finds that Konsavich procedurally defaulted these claims and therefore dismisses them.

---

[8]To the extent that Konsavich's fifth claim, regarding errors committed by the sentencing court, was arguably raised on direct appeal to the Fourth Circuit, it too is procedurally defaulted. On appeal, Konsavich argued that the sentencing guidelines were effectively mandatory in the Fourth Circuit. This argument was rejected by the Fourth Circuit. In the present motion, Konsavich argues that the sentencing court should have considered factors outside of 18 U.S.C. § 3553(a) in determining his sentence. The Fourth Circuit has made clear, however, that issues previously decided on direct appeal may not be "recast, under the guise of collateral attack." Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Thus, whether this claim was previously raised or not, it is now procedurally defaulted.

19

## CONCLUSION

In so far as the court finds petitioner's claims to be without merit, it is not necessary for there to be an evidentiary hearing. The court therefore denies petitioner's motion for a hearing. Further, for the reasons stated, the court will grant the respondent's motion to dismiss. The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and all counsel of record.

ENTER: This 19th day of June, 2009.

_/s/ Glen Conrad_
United States District Judge

20

Case 5:05-cr-00019-GEC-RSB   Document 153   Filed 06/19/09   Page 20 of 20   Pageid#: 500